**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Aquatech Corporation,<br><br>    Plaintiff<br>v.<br><br>Comfort Installs LLC,<br><br>    Defendant | Case No.: 2:24-cv-00259-JAD-MDC<br><br>**Order Granting Motion to Dismiss and Closing Case**<br><br>[ECF No. 9] |

Aquatech Corporation, which has its principal place of business in Nevada, sues Comfort Installs LLC, for breaching a membership agreement by ordering Aquatech products and not paying for them.[1] Comfort Installs, a Missouri company, moves to dismiss this action for want of personal jurisdiction, arguing that it "has no business relationship with Aquatech or any other Nevada company" and isn't a party to the membership agreement.[2] Aquatech counters that Comfort Installs assumed or acquired the membership agreement from a company that itself had acquired the agreement from the original signatory (a third Missouri company), and that the timing of unpaid orders indicates that they were placed by Comfort Installs. Aquatech also requests that I grant it jurisdictional discovery if the allegations and evidence that it presents aren't sufficient for personal jurisdiction. I find that Aquatech has neither carried its burden of demonstrating that Comfort Installs purposefully availed itself of conducting activities in Nevada nor shown that it is capable of doing so, so I grant the motion to dismiss without leave to amend, and I deny Aquatech's request for discovery because the evidentiary support it seeks wouldn't cure this case's jurisdictional shortcomings.

---

[1] ECF No. 1 (complaint).
[2] ECF No. 9 at 1.

**Background**

**A.    Aquatech seeks overdue payments from Comfort Center but discovers it no longer exists.**

In October 2014, Aquatech and The Comfort Center, LLC entered into a membership agreement.[3] Comfort Center, a Missouri company, became an authorized Aquatech member, which gave it the right to use Aquatech's trademarks and pool-product purchasing system and the option to buy shares of Aquatech stock.[4] In return, Comfort Center agreed to prominently display and identify itself with Aquatech's trademarks, respond to and pursue sales that Aquatech referred, and pay all purchase invoices and support fees "when and as due in strict accordance with [Aquatech's] credit policy."[5] The membership agreement also contained a choice-of-law clause establishing that it would be "governed by and interpreted in accordance with the laws of the state of Nevada."[6]

This relationship apparently went on uneventfully for years—Aquatech products were purchased, and timely payments for those products were tendered.[7] But in October 2023, Aquatech realized that some purchases made through Comfort Center's account hadn't been paid for and sent a demand letter to Comfort Center "seeking payment for outstanding amounts due."[8] Comfort Center's lawyer Jere Loyd responded, but to Aquatech's surprise, he informed it that

---

[3] ECF No. 10-2.
[4] *Id.* at 3–4.
[5] *Id.* at 4–5.
[6] *Id.* at 12.
[7] ECF No. 10-1 at ¶ 7.
[8] *Id.* at ¶ 8; ECF No. 10-3.

Comfort Center no longer existed.[9]  Loyd suggested that another entity, Comfort Center Sales LLC (Comfort Sales), might have been the "responsible party."[10]  According to Loyd, Comfort Sales (also a Missouri company) had acquired Comfort Center's assets "and operated for about a year thereafter before cessation of business."[11]

**B.    Aquatech investigates, homes in on Comfort Installs, and sues it.**

After discovering that someone had purchased products through an account for a member that had ceased operations years prior, Aquatech began investigating.[12]  It learned that Comfort Center had indeed been wound up, Comfort Sales had been formed in December 2017, and Loyd's name appeared on Comfort Sales' articles of incorporation.[13]  At some point, Comfort Sales registered the fictious name "The Comfort Center" but cancelled it in July 2020.[14]  Several days after that cancellation, the name was registered to Comfort Installs.[15]  Aquatech realized that Comfort Installs is based out of the same location as Comfort Center and Comfort Sales were.  And it discovered that Comfort Sales and Comfort Installs share the same members, one of whom "is a descendant" of "the guarantors of the membership agreement" between Comfort Center and Aquatech.[16]  Based on this information and the letter from Loyd, Aquatech concluded that Comfort Installs had acquired Comfort Center's assets through Comfort Sales, including the

---

[9] ECF No. 10-3 at 2.  It appears that Comfort Center was officially wound up back in 2020.  ECF No. 10-4 at 2–3.
[10] ECF No. 10-3 at 2.
[11] *Id.*
[12] ECF No. 10-1 at ¶¶ 10–11.
[13] ECF No. 10-5 at 2–4.
[14] ECF No. 10-7 at 2.
[15] ECF No. 10-8 at 2.
[16] ECF No. 10-1 at ¶ 17; *see also* ECF No. 10-2 at 13; ECF No. 10-5 at 2; ECF No. 10-8 at 2.

membership agreement,[17] and sued Comfort Installs for breach of the membership agreement and, alternatively, for unjust enrichment.[18]

Comfort Installs now moves to dismiss, arguing that this court lacks personal jurisdiction over it because it has "no business connection" to Nevada, has never "acquired companies that have done . . . business in Nevada," and "has never done business with Aquatech."[19] Comfort Installs highlights that it never signed the membership agreement that Aquatech is suing it for breaching, and contends that it didn't otherwise acquire or assume the agreement from another company or purchase products from Aquatech, so it can't be forced to resolve Aquatech's claims in Nevada.[20] Aquatech counters that it has shown that Comfort Installs acquired the membership agreement, thereby consenting to this court's jurisdiction via the agreement's Nevada choice-of-law clause.[21] Aquatech also contends that, despite Comfort Installs' averments to the contrary, its own investigation suggests that Comfort Installs is responsible for the unsettled product orders.[22]

## Discussion

A federal court may dismiss an action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Fourteenth Amendment's Due Process Clause limits a court's power to bind a defendant to a judgment in the state in which it sits.[23] When, as here, the

---

[17] ECF No. 10-1 at ¶ 19.
[18] ECF No. 1 at ¶¶ 12–23.
[19] ECF No. 9 at 3.
[20] *Id.* at 2–3.
[21] ECF No. 10 at 3–4.
[22] *Id.*
[23] *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because Nevada's long-arm statute grants courts jurisdiction over persons "on any basis not inconsistent with" the U.S. Constitution, the

defendant is a nonresident, the court must determine whether the defendant has "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[24] "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."[25] But Aquatech doesn't contend that general jurisdiction exists; it argues only that this court has specific jurisdiction over Comfort Installs.[26]

### A. To demonstrate that the court has specific jurisdiction over a non-forum defendant, the plaintiff must show purposeful availment.

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[27] This means that "the plaintiff cannot be the only link between the defendant and the forum"[28] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of context with the forum [s]tate."[29] Courts in the Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[30] The plaintiff bears the burden of satisfying the first two by showing that (1) the defendant "purposefully avail[ed] [itself] of the privileges of conducting activities in the forum," and (2)

---

jurisdictional analyses under state law and federal due process are identical.  *See id.*; Nev. Rev. Stat. § 14.065.

[24] *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up).

[25] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

[26] ECF No. 10 at 2–3.

[27] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (cleaned up).

[28] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[29] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[30] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

the claim "arises out of or relates to the defendants' forum-related activities."[31]  An insufficient showing at either prong requires dismissal, but if the plaintiff meets its burden, the defendant must then set forth a "compelling case" that the exercise of jurisdiction is unreasonable.[32]

When a court resolves a motion to dismiss for want of personal jurisdiction without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts."[33]  "Uncontroverted allegations in the plaintiff's complaint must be taken as true,"[34] and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor."[35]  But "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction."[36]

**B.     Aquatech hasn't met its burden of showing Comfort Installs' purposeful availment.**

Aquatech's recipe for how Comfort Installs purposefully availed itself of conducting activities in Nevada has two main ingredients.  It first contends that Comfort Installs acquired Comfort Sales' assets, which were previously Comfort Center's assets.[37]  From that acquisition, Aquatech intuits that Comfort Installs "also assumed the rights and obligations of the

---

[31] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (cleaned up).  Courts generally apply the purposeful-availment test to suits sounding in contract or negligence, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018).  This lawsuit sounds in contract, so I do not address the purposeful-direction test.

[32] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78).

[33] *Boschetto*, 539 F.3d at 1015 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).

[34] *Id.* (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

[35] *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T*, 94 F.3d at 588).

[36] *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (citing *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)).

[37] ECF No. 10 at 3–4.

membership agreement" that Comfort Center had entered into with Aquatech and therefore consented "to the jurisdiction of this Court via the venue provision contained therein."[38] It also argues that "Comfort Installs ordered products from Aquatech—a company with its principal place of business in Nevada."[39] The affidavit and other evidence Aquatech submitted is intended to support these two propositions. But it fails to demonstrate how the facts that it alleges and avers to, considered individually or in combination, amount to purposeful availment.

### 1. *Mere assumption of the membership agreement isn't enough.*

Much of the evidence Aquatech submits is aimed towards demonstrating that Comfort Installs assumed or acquired the membership agreement, and it tries to achieve this by showing how Comfort Installs is linked with the other two Comfort entities. Aquatech highlights, for example, that Comfort Installs operates out of the same location that Comfort Center and Comfort Sales did;[40] Comfort Sales registered the fictious name "The Comfort Center" after Comfort Center changed its name during its winding-up process, and then that fictious name was later registered to Comfort Installs;[41] the Comfort entities shared a lawyer who stated that Comfort Sales had acquired Comfort Center's assets before it ceased operating;[42] and that the same individuals operated Comfort Sales and Comfort Installs, one of whom "is a descendant" of "the guarantors of the membership agreement" between Comfort Center and Aquatech.[43] Aquatech also avers that purchases were made through its purchasing system after Comfort

---

[38] *Id.* at 3.
[39] *Id.*
[40] ECF No. 10 at 3-4; *see also* ECF No. 10-1 at ¶ 17; ECF No. 10-9 at 2–4.
[41] ECF No. 10 at 3-4; *see also* ECF No. 10-1 at ¶ 17; ECF No. 10-7 at 2; ECF No. 10-8 at 2–3.
[42] ECF No. 10 at 3-4; *see also* ECF No. 10-1 at ¶¶ 8–9; ECF No. 10-3 at 2.
[43] ECF No. 10-1 at ¶ 17; *see also* ECF No. 10-2 at 13; ECF No. 10-5 at 2; ECF No. 10-8 at 2.

Center ceased operating.[44]  According to Aquatech, these facts "resulted in [it] concluding that Comfort Installs LLC purchased the assets of" Comfort Center, "including the membership agreement."[45]

Aquatech's reliance on the membership agreement as a means by which this court can assert jurisdiction over Comfort Installs is flawed in several respects.  Preliminarily, even if Comfort Installs did assume or acquire the membership agreement,[46] it is well-established that "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction."[47]  That principle would apply in greater force here because even if the allegations and evidence Aquatech relies on did establish that Comfort Installs acquired or assumed the agreement, under Aquatech's theory it would have had to have done so through another Missouri company (Comfort Sales), which itself would necessarily have been made a party to the contract via another Missouri company (Comfort Center).[48]  So Comfort Installs did not "form" a contract with a Nevada resident in any traditional sense of that legal term.

---

[44] ECF No. 10-1 at ¶ 10.

[45] *Id*. at ¶ 19; *see also* ECF No. 10 at 4 ("The only possible inference is that Comfort Installs assumed the Membership Agreement.").

[46] Comfort Installs doesn't directly state that it didn't acquire the membership agreement but does aver that it "has no relationship to" it.  ECF No. 9-3 at ¶ 8.  And the affidavit and evidence that Aquatech submitted really only go to its basis for inferring that Comfort Installs either acquired or assumed that agreement.  Also, whether Comfort Installs assumed the membership agreement through some sort of successor-liability theory is a legal question that Aquatech doesn't explain or address.  But I need not resolve these issues because Aquatech hasn't shown that this court can exercise jurisdiction over Comfort Installs even if it did acquire or assume the membership agreement.

[47] *Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478).

[48] I also note that the membership agreement seems to establish that it couldn't have been transferred to Comfort Installs without Aquatech's express written permission, though neither party addresses this issue.  *See* ECF No. 10-2 at 11 ("[T]his Agreement shall not be transferred or assigned by Member without prior written approval of [Aquatech].").

Aquatech's focus isn't on the formation or general existence of this agreement, however. Instead, it primarily relies on what it refers to as a "venue provision" in that agreement, the presence of which it contends amounts to Comfort Installs' consent to this court's jurisdiction.[49] But the relevant provision in the membership agreement is actually a choice-of-law clause, not a venue- or forum-selection clause.[50] And while a defendant may consent to personal jurisdiction by agreeing to a forum-selection clause,[51] the same isn't true for general choice-of-law clauses.[52] A court can't ignore such a clause when performing a purposeful-availment analysis, but just agreeing to one doesn't amount to consent to personal jurisdiction.[53]

Aquatech cites to the district-court decision *Cloud Medical Doctor Software Corp. v. Krooss Medical Management Systems, LLC*[54] for the proposition that a "venue provision in [a] contract [is] sufficient to satisfy the first two prongs" of the Ninth Circuit's three-prong specific-jurisdiction test.[55] But the choice-of-law clause in *Cloud Medical* also established that the agreement there was "deemed to have been executed and delivered within the State of Nevada, as if entered into by residents thereof and to be performed entirely therein."[56] It was on that key

---

[49] ECF No. 10 at 3, 5; *see also* ECF No. 1 at ¶ 3.

[50] ECF No. 10-2 at 12 ("<u>GOVERNING LAW</u>: This agreement shall be governed by and interpreted in accordance with the laws of the state of Nevada, without giving effect to its conflicts of law principles.").

[51] *Burger King*, 471 U.S. at 472 n.14; *Holland Am. Line Inc.*, 485 F.3d at 458 ("[U]nder general contract principles, a forum[-]selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound.").

[52] *See Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987).

[53] *Id.*

[54] *Cloud Med. Dr. Software Corp. v. Krooss Med. Mgmt. Sys., LLC*, 2013 WL 6632634, at *3 (D. Nev. Dec. 16, 2013).

[55] ECF No. 10 at 3.

[56] *Cloud Med.*, 2013 WL 6632634, at *3.

language that the *Cloud Medical* court relied in finding the purposeful-availment prong had been satisfied,[57] and no similar language is present in the choice-of-law clause here. So even if Comfort Installs did acquire or assume the membership agreement, the mere fact that it contains a choice-of-law clause doesn't mean that Comfort Installs consented to this court's jurisdiction.

        ***2.     Aquatech hasn't shown that the other allegations and facts it relies on satisfy the purposeful-availment prong.***

Most of the evidence Aquatech provides relates to Comfort Installs' connections with the other two Comfort entities and doesn't establish that it had any contacts with, or purposefully availed itself of conducting activities in, Nevada. Aquatech did allege that Comfort Installs directly purchased Aquatech products.[58] But Comfort Installs disputes this allegation in its affidavit,[59] and nothing Aquatech submits conflicts with Comfort Installs' averments on this point.[60]

Significantly, if Aquatech could prove that Comfort Installs assumed or acquired the membership agreement *and* purchased products directly from Aquatech, all that would really

---

[57] *Id.* ("Having entered into an agreement deemed executed and delivered within the State of Nevada, the Defendants' actions satisfy the first prong.").

[58] ECF No. 1 at ¶ 9.

[59] ECF No. 9-3 at ¶ 8.

[60] Aquatech did aver that purchases were made using Comfort Center's Aquatech account after Comfort Center ceased doing business, but never stated (nor provided further evidence as to) when these purchases were actually made. *See* ECF No. 10-1 at ¶ 10. And the letter from Comfort Center's attorney only outlines the general timeframes in which Comfort Center and Comfort Sales apparently ceased operating. ECF No. 10-3 at 2. It isn't, as Aquatech argues, evidence that both of these entities "no longer existed at the time" some unspecified product orders were made. ECF No. 10 at 3–4. So it isn't clear on this record whether the at-issue purchases could have been made by Comfort Sales. And in the face of Comfort Installs' affidavit in which it declares that it didn't purchase products from Aquatech, I cannot assume the truth of Aquatech's allegations that it did. *See AMA Multimedia*, 970 F.3d at 1207 (citing *In re Boon Glob. Ltd.*, 923 F.3d at 650).

show is that Comfort Installs assumed and performed (or partially performed) under a contract with a company that has its principal place of business in Nevada. And without more, that still wouldn't be enough.[61] Aquatech hasn't, for example, alleged or shown that Comfort Center executed the membership agreement in Nevada,[62] or that Comfort Installs' (or any other Comfort entity's) performance under that agreement did or should take place in Nevada. Nor has it alleged or shown that Comfort Installs owns property or otherwise conducts business in Nevada.[63]

On the contrary, the membership agreement prohibits Comfort Center from using Aquatech's trademarks outside of (at most) a 25-mile radius around Comfort Center's location in St. Joseph, Missouri.[64] And it also establishes that payments for purchases from Aquatech must be transmitted to banks outside of Nevada.[65] For that matter, it isn't entirely clear whether Aquatech's performance under the membership agreement even takes place in Nevada; neither its complaint nor any evidence it submitted indicates where products are warehoused, packaged,

---

[61] *See Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) ("[T]he fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract."); *Talentscale, Inc. v. Aery Aviation, LLC*, 2023 WL 4888435, at *3–4 (D. Nev. Aug. 1, 2023) (Nevada plaintiff's "own performance under the contract in Nevada or its incurring of damages in Nevada" was not sufficient to confer jurisdiction over nonresident defendant despite contract with Nevada plaintiff that contained Nevada choice-of-law provision).

[62] Nor has Aquatech presented a theory under which such an action could be imputed to Comfort Installs.

[63] *See Talentscale*, 2023 WL 4888435, at *3–4; *see also Schwarzenegger*, 374 F.3d at 802 (purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there").

[64] ECF No. 10-2 at 14.

[65] *Id.* at 16.

or shipped from.  In short, Aquatech hasn't carried its burden of showing that its jurisdictionally relevant allegations, affidavits, and evidence demonstrate purposeful availment.

**C.    The court declines to grant Aquatech jurisdictional discovery and dismisses this case without leave to amend.**

Aquatech alternatively requests that I permit it to conduct jurisdictional discovery aimed at obtaining evidentiary support for its contention that Comfort Installs "assumed the rights and obligations of the membership agreement."[66]  It argues that showing Comfort Installs did so would demonstrate that it "consented to the present forum."[67]  Comfort Installs opposes this request, contending that Aquatech still hasn't presented facts indicating that the court would have jurisdiction over Comfort Center—the actual signatory to the agreement—much less Comfort Installs.[68]  And, according to Comfort Installs, if Aquatech is trying to argue that Comfort Center's contacts could somehow be imputed via the acquisition of assets and assumption of the agreement, it hasn't provided authority or a viable legal theory to support such an argument.[69]

Courts may grant jurisdictional discovery if "pertinent facts bearing on the question of jurisdiction are controverted or . . . a more satisfactory showing of the facts is necessary."[70]  But a court doesn't abuse its discretion when it denies a request for jurisdictional discovery that is "based on little more than a hunch that it might yield jurisdictionally relevant facts."[71]  It is

---

[66] ECF No. 10 at 5 (cleaned up).
[67] *Id.*
[68] ECF No. 15 at 9.
[69] *Id.*
[70] *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).
[71] *Id.* (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986)).

likewise not an abuse of discretion to refuse to allow further discovery when apparent that it "would not demonstrate facts sufficient to constitute a basis for jurisdiction."[72]

The facts that Aquatech seeks further or better proof of—assumption or acquisition of the membership agreement—wouldn't render Comfort Installs subject to this court's jurisdiction, as discussed in detail above. Though Aquatech doesn't request further discovery to support its allegation that Comfort Installs made purchases under the membership agreement, evidence of this sort wouldn't be enough to get the job done either. And Aquatech hasn't explained what other evidence or legal theories it could rely on besides the membership agreement. So jurisdictional discovery at this point would just be a fishing expedition.

These same problems would present jurisdictional barriers if Aquatech were able to offer some viable legal theory for imputing Comfort Center's and Comfort Sales' purported contacts to Comfort Installs, though it hasn't yet done so. Aquatech hangs its hat on the membership agreement and product orders, but such limited contacts with a Nevada company just aren't enough to show that Comfort Installs (or any Comfort entity) purposefully availed itself of conducting activities in Nevada. Aquatech may indeed have meritorious claims for unpaid invoices against Comfort Installs, or against the other two Comfort entities or their members or guarantors. And the circumstances surrounding the winding up of the first two Comfort entities and the subsequent creation of Comfort Installs may support a viable successor-liability theory even if Comfort Installs itself never purchased products from Aquatech.[73] But Aquatech simply

---

[72] *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 n.24 (9th Cir. 1977)).

[73] *See Vill. Builders 96, L.P. v. U.S. Lab'ys, Inc.*, 112 P.3d 1082, 1087 (Nev. 2005) (noting that when a corporation sells its assets to another corporation the purchaser isn't generally liable for the seller's debts, but also acknowledging that there are four well-recognized exceptions to that rule: "(1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction is really a consolidation or a merger; (3) when the purchasing corporation is merely a

hasn't demonstrated—nor shown that it can demonstrate—that it can force Comfort Installs to resolve these claims in Nevada. So I dismiss this case without prejudice and without leave to amend for lack of personal jurisdiction.

**Conclusion**

IT IS THEREFORE ORDERED that Comfort Installs' motion to dismiss **[ECF No. 9] is GRANTED.** This case is dismissed without prejudice and without leave to amend for want of personal jurisdiction. **The Clerk of Court is directed to CLOSE THIS CASE.**

                                                  _____
                                                  U.S. District Judge Jennifer A. Dorsey
                                                                     June 14, 2024

---

continuation of the selling corporation; and (4) where the transaction was fraudulently made in order to escape liability for such debts" (quoting *Lamb v. Leroy Corp.*, 454 P.2d 24, 27 (Nev. 1969))).

14